UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-61726-MC-COHN/SELTZER

UNITED STATES OF AMERICA,

       Petitioner,

v.

TRISTINA ELMES,

       Respondent.
_____/

## ORDER GRANTING PETITION TO ENFORCE INTERNAL REVENUE SERVICE SUMMONS

**THIS CAUSE** is before the Court on United States of America's Petition to Enforce Internal Revenue Service Summons [DE 1]. The Court has considered the Petition, the parties' related submissions, the argument heard and the evidence submitted during hearings before the Court on November 20, 2009 and December 4, 2009, the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

Petitioner seeks enforcement of a Internal Revenue Service ("IRS") summons served upon Respondent Tristina Elmes on July 17, 2008. The summons directed Respondent to appear and give testimony and provide certain documents in connection with an investigation into the collection of federal tax liabilities of the Respondent for taxable periods ending December 31, 2000 and December 31, 2001. On August 26, 2008, the Respondent appeared but refused to provide information based on her assertion of her First, Fourth and Fifth Amendment privileges.

The summons requested "[a]ll documents and records [in the possession or

control of Respondent] regarding assets, liabilities, or accounts held in the taxpayer's name or for the taxpayer's benefit which the taxpayer wholly or partially owns, or in which the taxpayer has a security interest." The summons indicates that the records requested include, but are not limited to, all bank statements, checkbooks, cancelled checks, savings account passbooks, and records of deposit for the period from July 1, 2007 to the date the summons is complied with.

The Court entered an Order to Show Cause on November 2, 2009 which directed the United States to serve a copy of the Petition on Ms. Elmes and directed her to file a Response. The Order also set a hearing on the matter for November 20, 2009.

On November 12, 2009, Ms. Elmes filed Respondent's Response to Petitioner's Petition [DE 4]. The Response states: "Respondent Elmes has already fulfilled the requirements of the summons as of August 26, 2008. Accordingly, Respondent Elmes is completely at a loss as to why the government has instituted an action more than a year after the summons was fulfilled." DE 4 at 1. "The real issue raised by the government . . . is that the Respondent did not give them (the IRS) the testimony they wanted. Thus, the actual complaint by the government is that the Respondent exercised her First, Fourth and Fifth Amendment rights." Id. at 2.

The Respondent cites case law for the proposition that the Fifth Amendment applies to books, records and documents. "Thus, according to the rationale of these cases, the compulsory production of private personal records cannot be obtained in view of a valid Fifth Amendment objection." Id. at 4.

The Petitioner filed a Reply [DE 5] on November 19, 2009. The Reply states that the Court should enforce the summons because the Petitioner has satisfied the

requisite elements: (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry will be relevant to that purpose, (3) that the information sought is not already in the IRS's possession, and (4) that in issuing the summons, it has followed the administrative steps required by the Internal Revenue Code. United States v. Powell, 379 U.S. 48, 57-59 (1964).

The Reply also addresses the Respondent's assertion of privilege. Petitioner argues that neither the First Amendment nor the Fourth Amendment apply because Respondent has failed to demonstrate, respectively, any harm or prejudice resulting from disclosure or any deceit on the part of the IRS.

With respect to the Fifth Amendment, Petitioner argues that Respondent has failed to show "that a substantial and real hazard of self-incrimination exists." DE 5 at 5. The Reply also states that the Court must review Respondent's assertions of privilege on a question-by-question basis.

At the November 20, 2009 hearing, the Court granted Respondent permission to file a Sur-Reply.[1] On December 2, 2009, Respondent filed her Sur-Reply [DE 7] along with a Motion for Civil Rule 11(b) Sanctions [DE 8].[2] The Sur-Reply represents that Ms. Elmes appeared before the IRS on August 26, 2008 and timely invoked her First, Fourth and Fifth Amendment rights. The Sur-Reply then discusses alleged

---

[1] The hearing was continued to December 4, 2009 once it became evident that the Court would need additional time to evaluate Ms. Elmes' assertion of her Fifth Amendment privilege on a question-by-question basis.

[2] Petitioner filed a Response to the Motion for Sanctions [DE 9] on December 3, 2009. At the hearing on December 4, 2009, the Court directed Ms. Elmes to file a Reply in support of her Motion for Sanctions on or before December 11, 2009. The Court will address Respondent's Motion for Sanctions in a separate Order.

misstatements made by Petitioner and claims that the Revenue Officer "was less than truthful in his Declaration." DE 7 at 2. Respondent also states that "Revenue Officer Wells (aka Smith) did not provide the Privacy Act or PRA notice to Respondent until pressed to do so by her. And then it was not in the proper form, i.e., not included in the 433A Form." Id. at 2-3.[3] In addition, Ms. Elmes raises the argument that she is not required to respond to the questions contained on the form 433-A presented to her at the interview because the form did not contain an Office of Management and Budget ("OMB") number.

Respondent then takes issue with the case law cited by the Petitioner in its Reply. With respect the Fourth Amendment, the Respondent argues that the IRS has engaged in a pattern of deceit. She points to a statement in the Revenue Officer's Declaration that states that the "books, records, papers, or other data sought by the summons are not already in the possession of the IRS." Respondent claims this statement is knowingly false because the Petitioner "had already collected the very information it was attempting to collect from Respondent through a third party summons." DE 7 at 5. Respondent also points to 2003 matter before Judge Dimitrouleas in which the Petitioner admitted that an affidavit submitted on its behalf contained misrepresentations.

Turning to the Fifth Amendment, the Sur-Reply again seeks to distinguish and discredit the authority cited by the Petitioner. With respect to whether a real threat of

---

[3] Form 433-A is an IRS form entitled "Collection Information Statement for Wage Earners and Self-Employed Individuals." The Revenue Officer based his questions on this form when conducting the interview on August 26, 2008.

criminal prosecution exists, the Respondent argues that "[t]wice now the Respondent has shown conclusively that government agents have lied to this court and yet the government claims that Respondent should not fear criminal intent." Id.

The Court held its second hearing on this matter on December 4, 2009. The Petitioner responded to Respondent's accusations that the Revenue Officer lied in his Declaration. Petitioner represented that although the IRS had received a limited amount of information pursuant to a third-party subpoena from Northern Trust, N.A., there is still additional information sought by the IRS which is not in its possession. Petitioner acknowledged that the Revenue Officer's Declaration could have been more specific by excluding the information obtained from Northern Trust, N.A. Nevertheless, Petitioner argued that, at most, these circumstances demonstrate an oversight by the Revenue Officer rather than the type of deceit alleged by Ms. Elmes. In addition, the Court conducted an *in camera* review of each question asked of Ms. Elmes to determine whether she has a valid claim of privilege that entitles her not to answer.

## II. ANALYSIS

The IRS possesses broad summons power. See United States v. Arthur Young & Co., 465 U.S. 805, 815-17 (1984). The Supreme Court has found that the investigatory authority of the IRS is "essential to our self-reporting system, and the alternatives could well involve far less agreeable invasions of house, business, and records." United States v. Bisceglia, 420 U.S. 141, 146 (1975). Further, the Supreme Court "has consistently construed congressional intent to require that if the summons authority claimed is necessary for the effective performance of congressionally imposed responsibilities to enforce the tax Code, that authority should be upheld absent express

statutory prohibition or substantial countervailing policies." United States v. Euge, 444 U.S. 707, 711 (1980).

In order to justify noncompliance with a valid IRS summons, the burden falls on the individual who is subject to the summons to demonstrate a legitimate constitutional challenge or to demonstrate bad faith, improper purpose, or other abuse of process on the part of the United States or the Internal Revenue Service. See Powell, 379 U.S. at 58. In the matter before this Court, the Court concludes that the IRS summons is valid and enforceable and that Respondent has failed to meet her burden to justify her noncompliance.

**1.     The IRS Summons is Enforceable**

To obtain enforcement of a summons, the IRS must demonstrate (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry will be relevant to that purpose, (3) that the information sought is not already in the IRS's possession, and (4) that in issuing the summons, it has followed the administrative steps required by the Internal Revenue Code. United States v. Powell, 379 U.S. 48, 57-59 (1964). The IRS may satisfy its burden by presenting the sworn affidavit of the agent who issued the summons attesting to these facts. United States v. Medlin, 986 F.2d 463, 466 (11th Cir. 1993). Thereafter, the burden shifts to the party contesting the summons to disprove one of the four elements of the government's *prima facie* showing or convince the court that enforcement of the summons would constitute an abuse of the court's process. Powell, 379 U.S. at 58 (other citations omitted); La Mura v. United States, 765 F.2d 974, 979-980 (11th Cir. 1985).

The Petition satisfies all four of the requisite elements. Respondent takes issue

with the third element arguing that the IRS has already obtained information from a third-party subpoena. As discussed above, the Petitioner explained that there is additional information sought by the summons which is not in the possession of the IRS. Accordingly, the summons is enforceable to the extent that it seeks relevant information which has not already been provided by Northern Trust, N.A.

2.  **Respondent May Not Rely on the First Amendment**

A party relying on the First Amendment to avoid complying with an IRS summons must show that disclosure of the information will be prejudicial to the party asserting the privilege. See St. German of Alaska Eastern Orthodox Catholic Church v. United States, 840 F.2d 1087 (2d Cir. 1988); Bronner v. Commissioner, 72 T.C. 368 (Tax Court 1979), aff'd, 734 F.2d 20 (9th Cir. 1984). Often, the prejudice is satisfied by demonstrating exposure to public hostility, deterrence of free association or denial of anonymity. See, e.g., St. German, 840 F.2d at 1092-93. Here, Respondent has failed to demonstrate any prejudice to her rights protected under the First Amendment.

3.  **Respondent May Not Invoke the Fourth Amendment**

Information obtained by an IRS summons may be suppressed pursuant to the Fourth Amendment if such information is obtained "by the deceit, trickery or misrepresentation of the Internal Revenue agent." United States v. Tweel, 550 F.2d 297, 299 (5th Cir. 1977). In this case, the Court finds that Respondent's arguments, including the failure of the Revenue Officer to exclude the information obtained from Northern Trust, N.A. from the information sought by the IRS, do not rise to "deceit, trickery or misrepresentation." Id. Moreover, the Fourth Amendment is often invoked to

suppress information obtained through deceit or trickery. Here, Respondent has not yet provided the IRS with the information sought. Petitioner's actions have been, and will continue to be, supervised by this Court to ensure that a Fourth Amendment violation does not occur.

### 4. Respondent Must Respond to the IRS Summons With Respect to All Information Not Protected by the Fifth Amendment

"[A] taxpayer may invoke [the Fifth Amendment] privilege in response to requests for information in an IRS investigation." United States v. Argomaniz, 925 F.2d 1349, 1353 (11th Cir. 1991). There is a two-step test to analyze a taxpayer's Fifth Amendment claim: "first, [determine] whether the taxpayer faces a real and substantial hazard of incrimination; and second, [determine] whether each answer or the act of producing each record would be sufficiently testimonial and incriminating to activate the fifth amendment privilege." United States v. Kowalik, 809 F.Supp. 1571, 1577 (S.D. Fla. 1992).

First, the taxpayer seeking the protection of this privilege to avoid compliance with an IRS summons "must provide more than mere speculative, generalized allegations of possible tax-related prosecution . . . . [T]he taxpayer must be faced with substantial and real hazards of self-incrimination." United States v. Reis, 765 F.2d 1094, 1096 (11th Cir. 1985) (per curiam).[4] "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself –

---

[4] In Argomaniz, the Eleventh Circuit clarified that Reis "does not state that the privilege may never be invoked in a civil IRS investigation." Argomaniz, 925 F.2d at 1353. "Instead, it stands for the proposition that a blanket claim of self-incrimination will not be successful in a civil IRS investigation. To the extent that Reis could be read otherwise, it is *obiter dictum*." (citation omitted) (emphasis in original).

8

his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified . . . ." Hoffman v. United States, 341 U.S. 479, 486 (1951). "There can exist a legitimate fear of criminal prosecution while an IRS investigation remains in the civil stage, before formal transfer to the criminal division." Argomaniz, 925 F.2d at 1353 (citing United States v. Sharp, 920 F.2d 1167, 1170 (4th Cir. 1990) (The privilege against self-incrimination "may apply in the context of an IRS investigation into civil tax liability, given the recognized potential that such investigations have for leading to criminal prosecutions.")). The privilege does, however, have its limits. "It would be an extreme if not an extravagant application of the Fifth Amendment to say that it authorized a man to refuse to state the amount of his income because it had been made in crime." United States v. Sullivan, 274 U.S. 259, 263-64 (1927). Accordingly, the privilege may not be invoked to avoid providing the amount of a person's income.

Second, the Fifth Amendment privilege may not be asserted generally, but must be made on a question-by-question basis. See Argomaniz, 925 F.2d at 1355 (district court must review assertions of privilege on a question by question basis); see also United States v. Roundtree, 420 F.2d 845, 852 (5th Cir. 1969) ("The district court may then determine by reviewing ... [the taxpayer's] records and by considering each question whether, in each instance, the claim of self-incrimination is well-founded."). Further, in Fisher v. United States, 425 U.S. 391 (1976), the Supreme Court addressed summonses issued by the IRS seeking working papers used in the preparation of tax returns. Because the papers had been voluntarily prepared prior to the issuance of the summonses, they could not be "said to contain compelled testimonial evidence, either

9

of the taxpayers or of anyone else." Id. at 409-10.  Accordingly, the taxpayer could not "avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else." Id. at 410.

However, the Supreme Court subsequently found that the act of producing subpoenaed documents may have a compelled testimonial aspect.  See United States v. Hubbell, 530 U.S. 27 (2000).  The act of producing documents, as well as a custodian's compelled testimony about whether she has produced everything demanded, may certainly communicate information about the existence, custody, and authenticity of documents.  "Compelled testimony that communicates information that may lead to incriminating evidence is privileged even if the information itself is not inculpatory." Id. at 38 (citation omitted).

In consideration of the foregoing law, the Court conducted an *in camera* review during which the Court asked Respondent the questions posed during the August 26, 2008 interview.  Each time Respondent invoked her Fifth Amendment privilege not to answer, the Court required Respondent to set forth the basis for the privilege.

The Court asked Respondent, in sum and substance, the following questions:

- In the past ten years, have you resided out of the United States for periods of six months or longer?
- How much cash do you have on hand that is not included in a bank account?
- What personal bank accounts do you have?

Respondent did not invoke her Fifth Amendment privilege in response to the above questions and instead she provided the Court with answers.  Therefore, the

10

Respondent is directed to also provide such information to the IRS. In addition, Respondent should provide the IRS with all documents in her possession related to the above questions.

The Court also asked Respondent, in sum and substance, the following questions:

- Do you have an employer?
- Who is your husband's employer?
- What is your employer's address, work telephone number, occupation and number of years with current employer?
- What is your husband's employer's address, work telephone number, occupation and number of years with current employer?
- Are you a party to any lawsuits?
- Do you anticipate any increase or decrease in your income?
- Are you the beneficiary of any trust, estate or life insurance policy?
- Do you have any bank accounts in foreign countries?
- Do you own any investments, like stocks, bonds, mutual funds, stock options, certificates of deposit, IRA accounts, PO, 401k plans?
- Do you have any credit cards?
- Do you have any credit cards in foreign countries?
- Do you have any life insurance policies?
- In the past ten years have any assets been transferred by you to someone else for less than full value?
- Do you own, rent or lease any real estate?

- Do you own or lease any vehicles?
- What personal assets do you own including furniture, personal effects, artwork, jewelry, collections, antiques or other assets?
- What is your monthly income and what is the source of that income?
- What are your total living expenses?
- In the event you are self-employed, what is the name of your business?
- Does the business engage in E-commerce, internet sales?
- Does your business have credit cards?
- What credit cards does your business accept?
- How much cash on hand does the business have?
- What business accounts do you have?
- What accounts receivable does your company have?
- What business assets do you have?
- What is the business's total monthly income and total monthly expenses?

Respondent invoked her Fifth Amendment privilege and declined to answer the twenty-seven questions listed immediately above. The Court concludes that Respondent does not have a valid Fifth Amendment privilege with respect to these twenty-seven questions for two reasons. First, these questions relate to Respondent's current financial situation. At the August 26, 2008 interview, the Revenue Officer explained that the purpose of the interview was to determine Respondents' "ability to pay what you owe on the income taxes for the years 2000 and 2001." Exhibit 1 to DE 4 at 12:19-21. The Summons relates to Respondent's nonpayment of her 2000 and 2001 taxes. Therefore, information regarding the Respondent's current financial status does not

12

provide a real and substantial hazard of criminal prosecution. See <u>United States v. Redhead</u>, 194 Fed. Appx. 234, 236 (5th Cir. 2006) ("The documents requested by the IRS pertain only to Redhead's asset holdings, and thus, are not inherently incriminating in nature."); <u>United States v. McMillian</u>, 2007 WL 646952, *3 (M.D. Fla. Feb. 27, 2007) ("But asking him about his <u>current</u> assets for collecting on his <u>past due</u> obligations does not implicate the Fifth Amendment's self-incrimination protections.") (emphasis in original).

Second, Respondent invoked the same, blanket reason to justify her invocation of the Fifth Amendment for each question. In essence, Respondent's argument is that there is a real hazard of criminal prosecution because the IRS will "lie" and "twist" any information provided by Ms. Elmes in a future criminal prosecution. The Court finds that this justification is speculative. Respondent may not rely on a general distrust of the IRS to refuse to comply with an otherwise valid summons. Moreover, Respondent invoked a similar justification each time she asserted the Fifth Amendment. Invoking the same, generalized fear twenty-seven separate times is no different than asserting a blanket claim of self-incrimination.

Accordingly, the Respondent is directed to provide answers to the IRS for the twenty-seven questions noted above. In addition, Respondent should provide the IRS with all documents in her possession related to the above questions.

Finally, the Court asked Respondent, in sum and substance, the following questions:

- Why didn't you file tax returns for the years 2002 through 2007?
- Do you plan on filing those returns?

With respect to these two questions, the Court finds that Respondent properly invoked the Fifth Amendment. By responding to these questions, Ms. Elmes may provide information which could lead to a criminal prosecution for failure to file tax returns for the years 2002 through 2007.

5. **The Privacy Act and Paper Reduction Act Does Not Provide a Justification for Respondent's Noncompliance**

Respondent argues that she was not required to provide the Revenue Officer with any information due to the fact that the form relied on by the Revenue Officer during the August 26, 2008 interview did not contain an OMB number. Several courts have held that individuals may not decline to respond to a tax form or a valid IRS summons because they lack OMB numbers. See, e.g., Cargill v. Comm'r, 272 Fed. Appx. 756 (11th Cir. 2008); Remark v. United States, 979 F.2d 770, 771 (9th Cir. 1992); Faber v. United States, 69 F. Supp. 2d 965, 969 (W.D. Mich. 1999); United States v. Stoecklin, 848 F. Supp. 1521, 1526 (M.D. Fla.1994). Moreover, this case involves "an administrative action or investigation involving an agency against specific individuals or entities . . . ." 44 U.S.C. § 3518(c)(1)(B)(ii). Therefore, no OMB number is required. See United States v. Particle Data, Inc., 634 F. Supp. 272, 275 (N.D. Ill. 1986).

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Respondent shall appear at the office of Revenue Officer Smith on **December 18, 2009 at 10:00 a.m.** and provide information in response to the IRS Summons consistent with this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, on this __7TH__ day of December, 2009.

                                                        JAMES I. COHN
                                                       United States District Judge

Copies provided to:

Counsel of record via CM/ECF

Tristina Elmes, *pro se*
1737 S.E. 14th Street
Fort Lauderdale, FL  33316