UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-61726-MC-COHN/SELTZER

UNITED STATES OF AMERICA,

       Petitioner,

v.

TRISTINA ELMES,

       Respondent.
_____/

## ORDER DENYING RESPONDENT'S MOTION FOR RECONSIDERATION

**THIS CAUSE** is before the Court on Respondent's Motion to Reconsider [DE 13]. The Court has considered the Motion, the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

On December 7, 2009, the Court entered an Order Granting Petition to Enforce Internal Revenue Service Summons. See DE 11. The complete background of this matter is contained in that Order. Accordingly, the Court will only briefly recount the relevant facts. The Petition seeks enforcement of a Internal Revenue Service ("IRS") summons served upon Respondent Tristina Elmes on July 17, 2008 ("Summons"). The Summons directed Respondent to appear and give testimony and provide certain documents in connection with an investigation into the collection of federal tax liabilities of the Respondent for taxable periods ending December 31, 2000 and December 31, 2001. On August 26, 2008, Respondent appeared at an interview before an IRS Officer but refused to provide any documents and declined to answer the majority of questions asked based on her assertion of her First, Fourth and Fifth Amendment privileges.

The Court held two separate hearings regarding the Petition. At the second hearing on December 4, 2009, the Court evaluated Respondent's claims of privilege on a question-by-question basis. With the exception of two questions, the Court found that Respondent did not have a valid claim of privilege under the First, Fourth or Fifth Amendment. See DE 11. Therefore, the Court directed Respondent to provide information and testimony in response to the Summons. On December 11, 2009, Respondent filed the instant Motion requesting that the Court reconsider its December 7, 2009 Order.

## II. ANALYSIS

The Court will first address two statements contained at the outset of Respondent's Motion. Although raised in a the section entitled "First Amendment," these statements take issue with the Court's authority to decide the issues raised by Respondent's constitutional arguments. Ms. Elmes states the following:

> [T]he amazing proclamation of this Court is that it has now declared it has a legally unsupported ability to decide what Constitutional Rights are afforded a living, breathing human being. In other words, this Court has now proclaimed that the only fundamental rights a living, breathing human being has are the ones this Court bestows upon its subjects.

DE 13 at 1-2.

Indeed, "[i]t is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 1 Cranch 137, 177, 2 L.Ed. 60 (1803). One of the rationales underlying this policy is made clear by this case. The scope and application of constitutional rights is not determined by Ms. Elmes, a citizen under investigation for the non-payment of taxes, or the government officials charged with the collection of such taxes, each of whom possess case-specific and vested interests in

2

the outcome of this action. Rather it is the job of this Court to examine the matter objectively and ensure that neither side acts above or outside the law. Supreme Court precedent squarely supports the authority of this Court to do so under the circumstances presented here. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself – his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified . . . ." Hoffman v. United States, 341 U.S. 479, 486 (1951).

Contrary to Ms. Elmes' aspersions, this Court does not arbitrarily bestow rights from above. Instead, the Court looks to countless decisions interpreting and applying the Constitution. The Court takes its responsibility to accurately state and apply the law very seriously – irrespective of the flippant and cavalier attitude of the Respondent. In this matter, the Court gathered and studied the relevant law. The Court also afforded Ms. Elmes every opportunity to raise arguments and present evidence as to why she should not be compelled to respond to the Summons. The Court concluded that Ms. Elmes failed to justify her substantial non-compliance and the Court will not reconsider its decision.

1.  **Respondent May Not Rely on the First Amendment**

Respondent argues that she should not be required to respond to the summons based on her First Amendment "right to remain silent." DE 13 at 1. Ms. Elmes is correct that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." Wooley v. Maynard, 430 U.S. 705, 714 (1977). "A First Amendment protection against compelled speech, however, has been found only in the context of

3

governmental compulsion to disseminate a particular political or ideological message." United States v. Sindel, 53 F.3d 874, 878 (8th Cir. 1995) (citing W.V. State Bd of Educ. v. Barnette, 319 U.S. 624 (1943) (holding that a state may not compel schoolchildren to salute the flag); Miami Herald Publ'g Co. v. Tornillo, 418 U.S. 241 (1974) (holding unconstitutional a state statute requiring newspapers to publish the replies of political candidates whom they had criticized); Wooley v. Maynard, 430 U.S. 705 (1977) (holding that a state may not require a citizen to display the state motto on his license plate); Pacific Gas and Electric Co. v. Pub. Utilities Comm'n, 475 U.S. 1 (1986) (holding that a state may not order utility company to distribute the literature of hostile groups with its own billing statements and newsletters)).

Ms. Elmes is incorrect when she states that the First Amendment requires that "any order by a court compelling speech about oneself is absolutely invalid." DE 13 at 4.[1] The Supreme Court has found that "essential operations of government may require [compelled speech] for the preservation of an orderly society,-as in the case of compulsion to give evidence in court." W.V. State Bd of Educ., 319 U.S. at 645 (Murphy, J., concurring); accord Murphy v. Waterfront Comm'n of New York Harbor, 378 U.S. 52, 94 (1964) ("Among the necessary and most important of the powers of the States as well as the Federal Government to assure the effective functioning of government in an ordered society is the broad power to compel residents to testify in court or before grand juries or agencies.").

---

[1] In fact the Fourth and Fifth Amendments contemplate that citizens may be compelled to provide information and testimony and institute safeguards for such situations.

4

The Summons at issue here does not require Respondent to disseminate publicly a message with which she disagrees. Accordingly, courts have rejected similar First Amendment claims in response to IRS summonses based on the "right not to speak." See, e.g., United States v. Conces, 507 F.3d 1028, 1040 (6th Cir. 2007); Sindel, 53 F.3d at 878 ("Therefore, the First Amendment protection against compelled speech does not prevent enforcement of the summons.").

2.    **Respondent May Rely on the Fifth Amendment on a Limited Basis**

"[A] taxpayer may invoke [the Fifth Amendment] privilege in response to requests for information in an IRS investigation." United States v. Argomaniz, 925 F.2d 1349, 1353 (11th Cir. 1991). A valid claim of privilege requires an affirmative answer to the following two questions: "whether the taxpayer faces a real and substantial hazard of incrimination; and . . . whether each answer or the act of producing each record would be sufficiently testimonial and incriminating to activate the fifth amendment privilege." United States v. Kowalik, 809 F. Supp. 1571, 1577 (S.D. Fla. 1992). The Court's December 7, 2009 Order turned on Respondent's failure to establish a "real and substantial hazard of incrimination." Id.

The cases that have upheld the exercise of the Fifth Amendment privilege in the face of a tax investigation typically involve the payment of taxes on income obtained from criminal activity, or suspected criminal activity. It is widely-accepted that the Fifth Amendment does not provide a blanket protection for taxpayers who refuse to provide any income or expense information. See, e.g., California v. Byers, 402 U.S. 424, 434 (1971) ("There is no constitutional right to refuse to file an income tax return . . . in order to avoid the possibility of legal involvement."); United States v. Daly, 481 F.2d 28, 30

5

(8th Cir. 1973) ("The chief error in defendant's position is his blanket refusal to answer any questions on the returns relating to his income or expenses for the years in question."); United States v. Egan, 459 F.2d 997, 998 (2d Cir. 1972) ("[A]ppellant's privilege would relate only to his refusal to respond to the question, not to a total failure to file the return."). In one of the landmark Supreme Court cases on this subject, Justice Holmes stated as follows:

> It would be an extreme if not an extravagant application of the Fifth Amendment to say that it authorized a man to refuse to state the amount of his income because it had been made in crime. But if the defendant desired to test that or any other point he should have tested it in the return so that it could be passed upon. He could not draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of the law.

United States v. Sullivan, 274 U.S. 259, 263-64 (1927). Accordingly, the privilege may not be invoked to avoid providing the amount of a person's income.

Here, the Court held two hearings regarding the enforcement of the Petition and Respondent's invocation of her First, Fourth and Fifth Amendment privileges. At the second hearing, which lasted three-and-a-half hours, the Court evaluated Ms. Elmes' assertion of her Fifth Amendment privilege on a question-by-question basis. For the reasons discussed below, the Court stands by its decision that Ms. Elmes must provide information in response to the majority of questions posed.

First, the Summons relates to the collection of outstanding tax liabilities of Ms. Elmes for the taxable years of 2000 and 2001. Significantly, the information sought by the IRS does not concern Ms. Elmes' income or activity during those years, but only financial information from July 1, 2007 until the date the Summons is complied with. At the August 26, 2008 interview, the Revenue Officer explained that the purpose of the

interview was to determine Respondents' "ability to pay what you owe on the income taxes for the years 2000 and 2001." Exhibit 1 to DE 4 at 12:19-21. In addition, the Court did find that Ms. Elmes could rely of the Fifth Amendment to avoid answering the questions of why she did not file tax returns from 2002 to 2007 and whether she intended to file such returns. See DE 11 at 13-14. Therefore, information regarding the Respondent's current financial status does not provide a real and substantial hazard of criminal prosecution. See United States v. Redhead, 194 Fed. App'x 234, 236 (5th Cir. 2006) ("The documents requested by the IRS pertain only to Redhead's asset holdings, and thus, are not inherently incriminating in nature."); United States v. McMillian, 2007 WL 646952, at *3 (M.D. Fla. Feb. 27, 2007) ("But asking him about his current assets for collecting on his past due obligations does not implicate the Fifth Amendment's self-incrimination protections.") (emphasis in original).

Second, in response to virtually all of the questions posed by the Court during the *in camera* hearing, Respondent repeated the same, generalized assertion that she fears the IRS will "lie" and "twist" any information provided by Ms. Elmes in a future criminal prosecution.[2] In her Motion, Ms. Elmes argues that "[a]ny information" or testimony she provides "will expose her to possible violations relating to the evasion of the payment of taxes and/or the willful failure to pay taxes." DE 13 at 5. Ms. Elmes did not inform the Court that her income is obtained illegally. Nor did Ms. Elmes identify how answering questions such as where she is employed and whether she has a credit

---

[2] Respondent's claim that the IRS will need to "lie" and "twist" any information she provides to bring a criminal prosecution implies that the information, on its own, is not incriminating.

7

card could be incriminating.  With respect to documents, this matter is similar to <u>United States v. Stafford</u>, 273 Fed. App'x 319 (5th Cir. 2008), a recent case decided by the Fifth Circuit.

> As far as Stafford's refusal to turn over documents, Stafford made no attempt to explain how the testimonial aspect of his turning over the relevant documents could tend to incriminate him.  Indeed, he makes no attempt to tether his concerns about being prosecuted with any of the varied sub-categories of documents subsumed by the IRS's document request (e.g., stocks, life insurance policies, checkbooks, cancelled checks).  Instead, he tries to rely on a generalized fear based on his past interactions with the IRS that any document that could possibly be covered by the request would tend to incriminate him.  That is not a proper use of the privilege.

<u>Id.</u> at 321.  Respondent's blanket assertion, no matter how many times it is repeated, is insufficient to support a valid Fifth Amendment privilege.  See <u>United States v. Schmidt</u>, 816 F.2d 1477, 1481-82 (10th Cir. 1987) ("Appellants' generalized fear of criminal prosecution for a violation of the tax laws is an insufficient basis for asserting a blanket claim of the Fifth Amendment privilege in refusing to produce any of the documents requested by the summonses."); <u>Lukovsky v. Commissioner</u>, 692 F.2d 527, 528 (8th Cir. 1982) ("The privilege is available to protect them from real dangers of self-incrimination, not to avoid answering questions altogether.").

Third, Respondent cannot base a real and substantial hazard of incrimination on a future intention to ignore civil penalties or obligations.  Respondent emphasizes the fact that the IRS agent "threatened Elmes with prosecution under 26 U.S.C. § 7210." DE 13 at 4.  Section 7210 provides that an individual who fails to obey an IRS summons may be fined, imprisoned or both, and required to pay the costs of prosecution.  See 26 U.S.C. § 7210.  It is entirely circular for a citizen to invoke her Fifth

Amendment privilege to withhold information based the fact that the citizen may be prosecuted for the failure to comply with her future legal obligations, rather than the possibility of a prosecution based on the incriminating nature of the information.

In Marchetti v. United States, 390 U.S. 39 (1968), the Supreme Court found that, in limited circumstances, the Fifth Amendment may apply to future acts and moved away from the "rigid chronological distinction adopted in" its prior decisions. Id. at 53. In so doing, the Court did acknowledge that "although prospective acts will doubtless ordinarily involve only speculative and insubstantial risks of incrimination, this will scarcely always prove true." Id. at 54.

Thereafter, the Court rejected the argument that a registration requirement of the National Firearms Act violated the Fifth Amendment because the information disclosed could be used in connection with offenses that the transferee of the firearm might commit in the future. See United States v. Freed, 401 U.S. 601 (1971). There, the Court stated that "Appellees' argument assumes the existence of a periphery of the Self-Incrimination Clause which protects a person against incrimination not only against past or present transgressions but which supplies insulation for a career of crime about to be launched. We cannot give the Self-Incrimination Clause such an expansive interpretation." Id. at 606-07. Likewise, the Court held that "a future intention to commit perjury or to make false statements if granted immunity because of a claim of compulsory self-incrimination is not by itself sufficient to create a 'substantial and real' hazard that permits invocation of the Fifth Amendment." United States v. Apfelbaum, 445 U.S. 115, 131 (1980) (citations omitted). In Apfelbaum, the Supreme Court emphasized that "'[there] is, in our jurisprudence, no doctrine of anticipatory contempt.'"

9

Id. (quoting United States v. Bryan, 339 U.S. 323, 341 (1950)).

Here, because Ms. Elmes cannot identify the incriminating nature of the information sought by the IRS, the Court finds that her risk of incrimination is only speculative and insubstantial. Moreover, if Ms. Elmes were able to establish her risk of incrimination based on her future intention to ignore her obligations imposed by this Court or the law, that would be an application of the Fifth Amendment even more extravagant than the argument rejected by Justice Holmes in Sullivan.

Due to the nuances of the applicable law, it is important for the Court to specify exactly what issues are being decided. The Court finds that Respondent cannot rely on a generalized fear of the IRS to invoke her Fifth Amendment privilege to avoid providing information regarding her current financial ability to pay outstanding tax liabilities from 2000 and 2001. That Respondent may face future criminal prosecution if she decides not to comply with the Summons or because she will not pay civil penalties is insufficient to withhold current financial information, which is not incriminating. The Court acknowledges that a different analysis will apply if the United States uses any information provided by Ms. Elmes in response to the Summons for a criminal prosecution unrelated to her 2000 and 2001 liabilities.

This is not a fishing expedition. The IRS is seeking basic financial information that millions of American taxpayers voluntarily provide to the government each year. Most of those with no more prompting than an April 15th deadline. Whether Ms. Elmes pays her taxes is ultimately an issue to be resolved between her and the IRS. While the Court respects Respondent's right to present a good-faith and vigorous defense on

her own behalf, the Court also expects that the Respondent will comply with this Court's Orders once a decision has been made. Failure to do so will subject Ms. Elmes to possible sanctions such as the imposition of costs and incarceration separate and apart from her issues with the IRS.[3]

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Respondent's Motion to Reconsider [DE 13] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 17TH day of December, 2009.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record on CM/ECF

Tristina Elmes, *pro se*
1737 S.E. 14th Street
Fort Lauderdale, FL  33316

---

[3] Neither the Privacy Act nor the Paper Reduction Act provide Respondent with a basis to refuse compliance with the Summons. Ms. Elmes has not provided any authority to the contrary and the Court will not reconsider its decision on this point.